## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON COLON and** | : | |
| **MARIA JACQUELINE** | | |
| **DISEN-COLON,** | : | |
| | | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:02-2123** |
| | | |
| **v.** | : | **(MUNLEY, D.J.)** |
| | | **(MANNION, M.J.)** |
| **COLONIAL INTERMEDIATE UNIT** | : | |
| **20, JEFFREY KARPEN, CHERYL** | | |
| **BERRY, and JOSEPH MICKLEY,** | : | |
| | | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

Pending before the court are: (1) a motion for summary judgment filed on behalf of defendants Colonial Intermediate Unit 20, ("CIU 20"), and Joseph Mickley, (Doc. No. 91); (2) a motion for summary judgment filed on behalf of defendant Jeffrey Karpen, (Doc. No. 93); and (3) a cross-motion for summary judgment filed on behalf of the plaintiffs, Brandon Colon and Maria Jacqueline Disen-Colon, (Doc. No. 96).


## I. PROCEDURAL HISTORY

On November 25, 2002, the plaintiffs, proceeding pro se, filed the instant action. (Doc. No. 1). After having been directed to do so by the court, (Doc. Nos. 4, 12, 14), on April 8, 2003, the plaintiffs filed a counseled amended complaint which set forth claims pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Individuals with Disabilities Education Act,

("IDEA"), 20 U.S.C. §§ 1400-1487; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101.  (Doc. No. 17).

In considering motions to dismiss the plaintiffs' complaint, the undersigned issued a report dated November 18, 2004, in which it was recommended that the individual claims against defendants Mickley and Karpen for alleged violations of the ADA and Section 504 of the Rehabilitation Act be dismissed.  In all other respects, it was recommended that the motions be denied.  (Doc. No. 58).  By order dated December 13, 2004, the report of the undersigned was adopted and the instant action was remanded for further proceedings.  (Doc. No. 59).

On July 29, 2005, a motion for summary judgment was filed on behalf of defendants CIU 20 and Mickley, (Doc. No. 91), along with a statement of material facts, (Doc. No. 91, Attachment), and a supporting brief, (Doc. No. 92).

Also on July 29, 2005, a motion for summary judgment was filed on behalf of defendant Karpen, (Doc. No. 93), along with a supporting brief, (Doc. No. 94), and statement of facts, (Doc. Nos. 99).

On the same day, a motion for summary judgment was filed on behalf of the plaintiffs, (Doc. No. 96), along with a statement of facts, (Doc. No. 98), and a supporting brief, (Doc. No. 102).

On August 1, 2005, supporting exhibits were filed by the plaintiffs,

(Doc. No. 100), as well as defendants CIU 20 and Mickley, (Doc. No. 101).

On August 20, 2005, the plaintiffs filed a consolidated brief in opposition to the defendants' motions for summary judgment.  (Doc. No. 103).

On August 22, 2005, defendant Karpen filed a reply to the plaintiffs' statement of facts and a brief in opposition to the plaintiffs' motion for summary judgment.  (Doc. Nos. 104, 106).  On the same day, defendants CIU 20 and Mickley filed a brief in opposition to the plaintiffs' motion for summary judgment, (Doc. No. 105).

On September 2, 2005, defendants CIU 20 and Mickley filed a reply brief in support of their motion for summary judgment.  (Doc. No. 109).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

> proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  Id.  The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted).  Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court may not weigh the evidence or make credibility determinations.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).  In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party.  Id. at 393.

If the moving party meets his initial burden, the opposing party must do

4

more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

## IV. DISCUSSION

As set forth in the court's prior report on this matter, in their amended complaint, the plaintiffs allege that the minor plaintiff, Brandon Colon, ("Brandon"), is a student with a disability[1], who has resided within the Pocono Mountain School District, ("District"), at all times relevant to this action.

On September 11, 2000, the plaintiffs allege that the District initiated a multidisciplinary evaluation, ("MDE"), of Brandon, which resulted in the production of a comprehensive evaluation report, ("CER"), dated September 23, 2000. In the CER, it was concluded that Brandon's lack of success in the classroom was directly linked to his behaviors. As such, Brandon was found eligible for special education due to the existence of a serious emotional disturbance.

Based upon the CER, the plaintiffs allege that an individual education program, ("IEP"), was developed for Brandon which included one annual goal and three short-term instructional objectives that addressed Brandon's behavior. According to the plaintiffs, the IEP did not contain a behavior management plan.

---

[1]The plaintiffs allege that Brandon has been identified as a student with emotional disturbance. (Doc. No. 17, ¶ 1).

5

On September 26, 2000, the plaintiffs allege that Brandon was placed at the Barrett Elementary Center within the District, which he attended until approximately February 6, 2001.  Brandon was then assigned to the Pocono Mountain Elementary Center North. During this entire time, the plaintiffs allege that Brandon exhibited serious behavior problems which included banging his head, slapping his face, threatening and hitting other students, throwing furniture, and leaving the class without permission.  As a result, the plaintiffs allege that Brandon was subjected to the use of passive restraints by school district personnel.

On or about September 27, 2002, the District conducted a psychiatric evaluation of Brandon, performed by Dr. Martha Turnberg, which recommended that Brandon's placement be changed to a partial hospitalization program for the purpose of addressing his academic, behavioral and emotional needs.

On October 16, 2001, an interagency meeting was convened for the purpose of arranging Brandon's transfer to the partial hospitalization program operated by the defendant CIU.  The plaintiff was subsequently placed in the program on October 24, 2001.

During Brandon's placement in the CIU partial hospitalization program, the plaintiffs allege that he continued to exhibit disruptive behaviors, including verbal and physical abuse of others and self-injurious behaviors.  Between his initial admission into the program and December 11, 2001, the plaintiffs

allege that Brandon was repeatedly subjected to punishment for behavior which was a manifestation of his disability, including the use of physical restraints, placing him in a "time out room" for an entire day, and depriving him of benefits generally available to students admitted to the program, such as hot lunches, bathroom privileges and regular breaks.  According to the plaintiffs' amended complaint, these actions were not taken in accordance with an individualized behavior management plan.

On or about December 11, 2001, Brandon's mother was informed by CIU personnel that Brandon was to be immediately discharged from the program, and that his placement was immediately changed to a "homebound" placement.  The plaintiffs allege that his change in placement was implemented without adherence to the procedural requirements of the IDEA, 20 U.S.C. §§ 1414-1415, which require notice to the parents, the opportunity to participate in an IEP meeting, the right to object to any proposed change in placement and to maintain the pendent placement during any due process hearing and subsequent appeals.

The plaintiffs allege that defendant CIU and defendant Mickley, the Executive Director of CIU, failed to assure that employees of the agency refrained from discrimination against Brandon on the basis of his disability, by failing to provide appropriate training and support for staff of the partial hospitalization program who worked with Brandon, and by failing to assure that the CIU adopted diplomatic policies and procedures to assure that

Brandon's right to remain free from such discrimination was not violated.

The plaintiffs further allege that defendant CIU operates on the basis of a policy, practice or custom that allows students such as Brandon to be subjected to punishment on the basis of disabilities in violation of their rights under the IDEA and Chapter 14 of the Regulations of the Pennsylvania Department of Education, and allows the parents of such children to be deprived of their due process rights as provided by said laws.

Upon information and belief, the plaintiffs allege that defendant Mickley knew or should have known that Brandon's rights under the IDEA, Pennsylvania Regulations and United States Constitution were being violated during his admission to the partial hospitalization program and failed to take corrective action.

The plaintiffs' amended complaint alleges that defendants Berry and Karpen subjected Brandon to punishment for behavior that was a manifestation of his disability by placing him in a "time out room" for an entire day, subjecting him to physical restraint, and depriving him of privileges generally due to students enrolled in the partial hospitalization program. The plaintiffs allege that such actions were taken in violation of the plaintiffs' rights under the IDEA, § 504 of the Rehabilitation Act, and the ADA.

The plaintiffs allege that Brandon's right to remain free of discrimination on the basis of his disability and to receive appropriate programming for his behavioral symptoms was clearly established at all times pertinent to this

8

complaint.  As a result of the defendants' actions and omissions, the plaintiffs allege that Brandon suffered severe emotional distress, physical injuries, and was deprived of the benefit of appropriate educational programming, causing him to lose educational opportunities and resulting in an increase in the severity of his disability.

The plaintiffs have brought the instant action seeking monetary damages on the basis of the above allegations.

### A.   MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS CIU 20 AND MICKLEY

As the record now stands, all of the causes of action set forth by the plaintiffs in their amended complaint remain against defendant CIU 20.  With respect to defendant Mickley, the IDEA and § 1983 claims brought against him in his individual and official capacities remain.

In their motion for summary judgment, defendants CIU 20 and Mickley initially argue that they are entitled to summary judgment because the plaintiff has failed to state a cause of action under the IDEA.  To this extent, the defendants argue that: (1) CIU 20 is not the entity responsible for providing FAPE; (2) the plaintiff has failed to exhaust administrative remedies under the IDEA; and (3) the plaintiff, Maria Jacqueline Diesen-Colon, cannot bring an individual claim under the IDEA.  The defendants seek dismissal of the plaintiffs' amended complaint on these grounds.  (Doc. No. 92, pp. 3-8).

The plaintiffs challenge the defendants' argument that CIU 20 is not the

entity responsible for providing Brandon with FAPE. To this extent, the plaintiffs argue that this same claim was previously raised and addressed by the court in its November 18, 2004, report. The plaintiffs argue, therefore, that the issue is barred by the "law of the case doctrine." (Doc. No. 103).

The defendants do not dispute that they previously raised this argument in support of their motion to dismiss the plaintiffs' amended complaint, but take issue with the plaintiffs' reliance on the "law of the case" doctrine, as that term is defined[2]. The defendants further argue that, even if the doctrine could be applied to this action, it would not preclude the court from reconsidering its previous position. (Doc. No. 109, pp. 1-3).

In previously addressing the defendants' argument that CIU 20 is not the entity responsible for providing FAPE, this court previously found that CIU 20 was an entity which could be held liable, in conjunction with the school district, for providing FAPE to the plaintiff. (Doc. No. 58, pp. 7-11). To the extent that the defendants disagreed with that finding, they could have filed objections to the report. They did not do so. Finding no plain error or manifest injustice relating to this court's decision, the District Judge adopted the report in its entirety. (Doc. No. 59). While the "law of the case" doctrine, as that term is defined, does not technically apply to the instant action, the

_____

[2]"Law of the case" is defined as the doctrine holding that a decision rendered in a former appeal of a case is binding in a later appeal; an earlier decision giving rise to the application of this doctrine. Black's Law Dictionary 893 (7th ed. 1999).

court finds no basis to revisit the issue on the defendants' motion for summary judgment and stands by its prior decision.

Defendants CIU 20 and Mickley next argue that the plaintiffs' IDEA claim should be barred by their failure to exhaust administrative remedies. Specifically, the defendants argue that the plaintiffs failed to seek due process against CIU 20 for any alleged failure to implement the school district's IEP and, instead, proceeded only against the school district. (Doc. No. 92, pp. 8-10).

This claim was also considered in the court's previous report. The court found that because the plaintiffs are seeking monetary damages, which are not available in IDEA proceedings, exhaustion under the IDEA would be futile. On this basis, the court determined that the exhaustion requirement did not bar the plaintiffs' claims[3]. (Doc. No. 58, pp. 20-21). Again, the defendants did not object to this determination. The court finds no basis on which to revisit the issue and stands by its prior decision.

---

[3]The court notes that in their brief in opposition to the plaintiffs' motion for summary judgment, the defendants again raise the issue of exhaustion citing to this District's case of Falzett v. Pocono Mountain School District, 150 F.Supp.2d 699 (M.D.Pa. 2001), for the proposition that exhaustion of administrative remedies is not excused simply because parents are seeking monetary damages. Upon review, Falzett is clearly distinguishable from the instant action. In Falzett the court required exhaustion because the plaintiff, in addition to monetary damages, sought relief which an administrative tribunal could have provided. The court resisted the temptation to reach any broader conclusion with respect to the exhaustion of administrative remedies in an IDEA action. See Falzett, 150 F.Supp.2d at 706.

Next, the defendants CIU 20 and Mickley argue that Maria Jacqueline Disen-Colon cannot bring an individual claim under the IDEA as the parent of the minor plaintiff[4].  (Doc. No. 92, pp. 10-12).

The plaintiffs have not addressed or otherwise challenged this claim in their brief in opposition to the defendants' motion for summary judgment.  As such, the claim is deemed unopposed.  See Local Rule 7.6.  The defendants' motion for summary judgment should, therefore, be granted to the extent that the plaintiff, Maria Jacqueline Disen-Colon, attempts to assert a cause of action under the IDEA in her own right[5]/[6].

Defendants CIU 20 and Mickley next argue that the plaintiffs have failed to state a cause of action under §1983.  To this extent, the defendants argue that any liability pursuant to §1983 is predicated upon a violation of the IDEA and, therefore, must fail for the same reasons as the IDEA cause of action.  (Doc. No. 92, pp. 12-14).

As discussed above, the court has found that the IDEA claim brought

---

[4]The court notes that this argument was not previously raised in conjunction with the defendants' motion to dismiss the plaintiffs' amended complaint.

[5]For the record, in considering the merits of the defendants' claim, the court has reviewed the caselaw cited to by the defendants and finds their argument to be well-taken.

[6]The court notes that the plaintiff retains standing to bring the instant action on behalf of her son.  See Irene B. v. Philadelphia Academy of Charter School, 2003 WL 24052009 *5 (E.D.Pa.).

on behalf of Brandon is not barred as against CIU 20[7]. As such, he should also be permitted to proceed with his §1983 claim premised on the IDEA violations. However, to the extent that the court has found that the plaintiff, Maria Jacqueline Diesen-Colon, has no standing to bring an IDEA claim in her own right, her §1983 claim premised on the IDEA violation should also be dismissed. In addition, because the claims brought by the plaintiff, Maria Jacqueline Disen-Colon, under §504 of the Rehabilitation Act, and the ADA are premised on violations of the IDEA, these claims are also deficient and should be dismissed. See Irene B. v. Philadelphia Academy of Charter School, 2003 WL 24052009 *5 (E.D.Pa.).

The defendants CIU 20 and Mickley next argue that defendant Mickley is entitled to summary judgment on the IDEA and §1983 claims which remain against him based upon the doctrine of qualified immunity. (Doc. No. 92, pp. 14-15).

As noted in this court's previous report, the defense of qualified immunity may be advanced by school officials alleged to have violated the IDEA. See Matula, 67 F.3d at 499 (citations omitted). This defense, however, only applies to individuals acting in their individual capacities. Id. (citing Brandon v. Holt, 469 U.S. 464, 472-73 (1985)). The §1983 claims against the individual defendants in their official capacities are equivalent to

---

[7]As the defendants have separately discussed the claims brought against defendant Mickley, the court will address those claims, in turn.

13

claims against the government entity itself and may not be defended against on the basis of qualified immunity. Id.

In considering a defense of qualified immunity, the court must first determine whether the plaintiffs have alleged a constitutional or statutory violation. Id. If so, the defendant "will nevertheless not be liable if '[his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

With respect to defendant Mickley, the plaintiffs have alleged the following in their complaint:

> 8.   Defendant Joseph Mickley, Ph.D., is the Executive Director of the Colonial Intermediate Unit 20, and, as such, has the responsibility of assuring that children who are provided special education and related services by the I.U. are provided with the educational services and procedural protections to which they are entitled under the Individuals with Disabilities Education Act, 20 U.S.C. §1400-1487, and under §504 of the Rehabilitation Act, 29 U.S.C. §794(a)(2)[8].
>
> \*   \*   \*
>
> 31.   Defendant IU 20 and Joseph Mickley, Ph.D., the Executive Director of defendant I.U. 20, failed to assure that employees of the agency refrained from discrimination against Brandon on the basis of his disability, by failing to provide appropriate training and support for

---

[8]As previously discussed, the court has already found that defendant Mickley cannot be held liable under §504 of the Rehabilitation Act. (Doc. Nos. 54 & 59).

staff of the partial hospitalization program who worked with Brandon, and by failing to assure that the IU 20 adopted and (sic) diplomatic policies and procedures to assure that Brandon's right to remain free from such discrimination was not violated.

\* \* \*

33.   Upon information and belief, defendant Mickley knew or should have known that Brandon's rights under the IDEA, Pennsylvania regulations and United States Constitution were being violated during his admission to the partial hospitalization program and failed to take corrective action.

(Doc. No. 17).

Because the plaintiffs' complaint alleges statutory violations by defendant Mickley, the court must address the second prong of the qualified immunity defense.

"[T]o defeat a qualified immunity defense in an IDEA action, a plaintiff must show more than that he or she was denied a free, appropriate public education in a general sense; rather, a plaintiff must demonstrate 'that the particular actions taken by defendants were impermissible under law established at that time.'" Matula, 67 F.3d at 499-500 (citations omitted).

In response to the allegations set forth in the plaintiffs' complaint, the defendants have provided a statement of material facts, supported by various documentation which indicate that George Makovich of CIU 20 was the director in charge of the partial hospitalization program at all relevant times. (Doc. No. 91, ¶33; Doc. No. 101, Ex. 5, pp. 9-10).  Defendant Mickley did not

15

have any direct involvement with the plaintiff's program.  (Doc. No. 91, ¶ 34; Doc. No. 101, Ex. 5, p. 17).  Defendant Mickley did not know Brandon until the instant action was filed, and did not become aware of the due process hearings involving Brandon until after they occurred.  (Doc. No. 91, ¶ 32; Doc. No. 101, Ex. 5, pp. 14-16).  The plaintiffs never met defendant Mickley. (Doc. No. 91, ¶ 36; Doc. No. 101, Ex. 2, p. 113).

In response to the defendants' materials, the plaintiffs simply argue, without citation to the record or any other support, that "[a]s the Director of the CIU at the time that Brandon was enrolled there, he oversaw the implementation of the unlawful policies that led to the violation of plaintiff's rights."  (Doc. No. 103, p. 12).

Thus, although the plaintiffs' complaint generally alleges that defendant Mickley violated the Brandon's rights under the IDEA, the record before the court does not demonstrate that defendant Mickley took any particular actions or, for that matter, was required to take any actions with respect to Brandon. It follows then that the plaintiffs have not established that the actions or inactions of defendant Mickley were impermissible under the law established at the time.  Therefore, defendant Mickley is entitled to qualified immunity under Matula, and the defendants' motion for summary judgment should be granted with respect to the plaintiffs' claims under the IDEA and §1983 against defendant Mickley in his individual capacity.

Moreover, the defendants CIU 20 and Mickley argue that the claims

brought against defendant Mickley in his official capacity should be dismissed as they are redundant of the claims brought against CIU 20.  The plaintiffs have not addressed or otherwise challenged this argument in their brief opposing the defendants' motion for summary judgment.  Therefore, the defendants' argument is deemed unopposed pursuant to L.R. 7.6, and the defendants' motion for summary judgment should be granted to the extent that the plaintiffs attempt to set forth a claim against defendant Mickley in his official capacity[9].

The defendants CIU 20 and Mickley next argue that the plaintiffs' ADA and §504 claims against CIU 20 are "subsumed" by the IDEA count because those claims are nothing more than "restatements of the alleged IDEA violations."  (Doc. No. 92, pp. 15-17).

With respect to this argument, the Third Circuit has found that "the failure to provide a free appropriate public education violates IDEA and therefore could violate §504."  Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253 (3d Cir. 1999).  See also Matula, 67 F.3d at 492-93; J.M. v. Kingsway Regional School District, 2005 WL 2000179 (D.N.J.)(defendants

---

[9]The court notes for the record that official capacity actions are redundant where the entity for which the individuals worked itself is named. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985).  As such, the plaintiffs' claims against the individual defendants in their official capacities should dismissed because the CIU 20 is also named in each surviving claim where individual defendants are named.

denied summary judgment on argument that the plaintiff's §504 claim was essentially the same as the plaintiff's IDEA claim). Therefore, the provisions are not exclusive of each other and the defendants' motion for summary judgment should be denied on this basis.

Finally, defendants CIU 20 and Mickley argue that they are entitled to summary judgment because the plaintiffs cannot state a cause of action for punitive damages under §1983, the ADA, §504 or the IDEA against a municipality or government officials in their official capacity. (Doc. No. 92, pp. 17-18). The plaintiffs concede this fact, but argue that they are entitled to seek punitive damages against the individual defendants in their individual capacity. (Doc. No. 103, pp. 14-15). Because the court has found that defendant Mickley is entitled to qualified immunity on the claims against him in his individual capacity, the motion for summary judgment filed on behalf of defendants CIU 20 and Mickley should be granted in its entirety with respect to the plaintiffs' claims for punitive damages.

**B.    MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT KARPEN**

In his motion for summary judgment, defendant Karpen renews his argument that he is not a proper party to the instant action and that the settlement agreement entered into between the minor plaintiff's parents and the school district bars the instant action. (Doc. No. 94, pp. 3-4).

As discussed above with respect to the arguments raised by

defendants CIU 20 and Mickley, these issues were ruled upon by the court in its November 18, 2004, report and recommendation.   (Doc. No. 58). Defendant Karpen did not object to the findings in the report.  By order dated December 13, 2004, the court adopted the report in its entirety.  The court sees no reason to revisit these arguments and stands by its prior decision. Therefore, defendant Karpen's motion for summary judgment should be denied with respect to these claims.

Defendant Karpen next argues that the plaintiffs have failed to state a claim under §1983. To this extent, defendant Karpen argues that the plaintiffs have failed to establish any constitutional violations.  Moreover, based upon his argument above that he is not amenable to suit under the IDEA, defendant Karpen argues that the plaintiffs' §1983 claim must also fail to the extent that it is based upon a violation of the IDEA.  (Doc. No. 94, pp. 4-7).

Section 1983  imposes civil liability on any person who, acting under color of state law, deprives another individual of any rights, privileges or immunities secured by the Constitution or laws of the United States.  Section 1983 does not create any new substantive rights, but only provides a remedy for the violation of a federal constitutional or statutory right conferred elsewhere.  Baker v. McCollan, 443 U.S. 137, 144 n.3, (1979)(emphasis added).

Upon review of the plaintiffs' materials, contrary to defendant Karpen's argument, the plaintiffs are not basing their §1983 claim upon any violation

19

by defendant Karpen of their constitutional rights either by way of a substantive due process claim or an excessive force claim.  Instead, the plaintiffs specifically state that their §1983 claim is based upon defendant Karpen's violations of the IDEA.  Because the court has previously found that the plaintiffs' IDEA claim can proceed with respect to defendant Karpen, his motion for summary judgment should be denied to the extent that he argues that the plaintiffs have failed to set forth a §1983 claim against him.

Next, defendant Karpen argues that he is entitled to qualified immunity.  To this extent, defendant Karpen claims that the plaintiffs have not cited to any clearly established "law" which he is alleged to have violated.  Instead, defendant Karpen argues that the plaintiffs have only alleged that he has violated the Pennsylvania Department of Education regulations and the CIU 20 policies.  At most, defendant Karpen argues that these regulations and policies serve as a guide or resource and do not constitute any "laws."  (Doc. No. 94, pp. 7-9).

With respect to this argument, in order to implement the requirements of the IDEA, the Commonwealth of Pennsylvania, through the Department of Education, promulgated the Pennsylvania Special Education Regulations and the Pennsylvania Special Education Standards set forth at 22 Pa.Code Chapter 14.  In Geis v. Board of Education of Parsippany-Troy Hills, 774 F.2d 575 (3d Cir. 1985), the Third Circuit found that the state standards for educational opportunity for handicapped students are incorporated into the

20

IDEA[10], and are therefore enforceable in the federal courts.  Id. at 580-81.

In doing so, the court stated:

> " . . . we find that the incorporation of state standards
> is explicit in the Act.  As noted by the Ninth Circuit in
> Honig[11], supra. – upon which we relied in Everett[12] –
> a 'free appropriate public education' is defined under
> the Act as special education and related services
> that, *inter alia*, 'meet the standards of the state
> educational agency."  20 U.S.C. §1401(18)(B).  In
> Honig this was held to include the California
> standards for seismic safety of schools.  736 F.2d at
> 545.  We think it even more clearly applies to a
> state's own standard of educational opportunity for
> handicapped children. (citations omitted).  By this
> catchall provision, federal law incorporates any state
> standards that go beyond the minimum standards of
> the Act . . ."  Id.

Therefore, the plaintiffs' allegations that defendant Karpen violated the

provisions of the Pennsylvania regulations by punishing Brandon for behavior

that was a manifestation of his disability and using restraints on the minor

plaintiff despite the fact that his IEP did not contain any behavioral

management plan and no IEP meeting was convened to consider the

appropriateness of the plaintiff's program are, in essence, allegations of

violations of the IDEA.  Therefore, the plaintiffs have cited to a clearly

established law which defendant Karpen is alleged to have violated, and

---

[10]Formerly the known as the Education of the Handicapped Act,
("EHA"), 20 U.S.C. §§1400-1461 (1982).

[11]Students of California School for the Blind v. Honig, 736 F.2d 538 (9th
Cir. 1984).

[12]Everett v. Schramm, 772 F.2d 1114 (3d Cir. 1985).

defendant Karpen's motion for summary judgment should be denied on this basis.

In the alternative, without any reference to the record, defendant Karpen argues that the actions taken against Brandon, as alleged by the plaintiffs, including the use of passive restraint, placement of Brandon in a time-out room for an entire day, and depriving Brandon of the benefits generally available to students admitted to the program, such as hot lunches, bathroom privileges and regular breaks, were for Brandon's safety, the safety of others, or the protection of property. Defendant Karpen points to no evidence in the record, however, that these actions were taken in accordance with an individualized behavior management plan or that they were used not as punishment for behavior which is a manifestation of Brandon's disability, as alleged by the plaintiffs. These claims, if established by the plaintiffs, constitute violations of the Pennsylvania regulations, and as a result, the IDEA, which were clearly established at the time of the incidents in question. As a result, there is a genuine issue as to whether the alleged actions of the defendant were in violation of clearly established laws and the defendant's motion for summary judgment should also be denied on this basis.

Finally, defendant Karpen argues that punitive damages against him are not appropriate as there is no evidence in the record which would support a theory that he acted with reckless indifference.  (Doc. No. 94, p. 9).

Punitive damages are appropriate when the alleged wrongful acts of

the defendant reflect either bad motive or reckless indifference to the rights of the plaintiff.  Irene B. v. Philadelphia Academy Charter School, 2003 WL 24052009, *14 (E.D.Pa. 2003)(citing Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) ("We hold that a jury may be permitted to assess punitive damages in an action under §1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."); Keenan v. City of Philadelphia, 983 F.2d 459, 469-70 (3d Cir.1992) (quoting Bennis v. Gable, 823 F.2d 723, 734 (3d Cir.1987) as holding that "punitive damages in §1983 cases are available where the defendant's have acted with a 'reckless or callous disregard of, or indifference to, the rights and safety of others.'")).

Here, a reasonable juror could conclude that the facts alleged, if proven, could support a claim that the defendant's actions constituted a reckless indifference to Brandon's rights, which precludes the entry of summary judgment on the issue of punitive damages at this time. Therefore, defendant Karpen's motion for summary judgment should be denied with respect to the issue of punitive damages.

## C.   CROSS-MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF THE PLAINTIFFS

### 1.   Plaintiffs' Request for Summary Judgment with Respect to Defendant CIU 20

In their motion for summary judgment, the plaintiffs initially argue that they are entitled to summary judgment on the §1983 and IDEA claims set forth against defendant CIU 20[13]/[14].   (Doc. No. 102, pp. 6-18).

In order to establish a claim for municipal liability pursuant to §1983, a plaintiff must allege and prove that "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  City of Canton v. Harris, 489 U.S. 378, 385 (1989).  The plaintiff may establish the requisite causal link: (1) by demonstrating that the municipal entity caused the violation through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (1978); or (2) by demonstrating that the alleged constitutional violations were caused by a

---

[13]As discussed above, the court has found that defendant Mickley is entitled to qualified immunity with respect to the claims brought against him in his individual capacity and that any claim brought against him in his official capacity is redundant of the claims brought against the defendant CIU 20. Therefore, any claims with respect to defendant Mickley raised by the plaintiffs in their motion for summary judgment will not be discussed herein.

[14]The court notes that, in light of it's previous finding that the defendant CIU 20 is a proper party to an action brought pursuant to the IDEA and §1983, the plaintiffs have spent an inordinate amount of time in their supporting brief discussing this same issue.

custom or usage of the municipality which has "the force of law by virtue of the persistent practices of the [municipal] officials," <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167 (1970).

Here, to establish a municipal policy, the plaintiff relies upon CIU 20's Student Discipline Policy, which defendant Karpen testified was, in fact, in effect when Brandon Colon attended the CIU 20.  Although the defendants argue that this policy cannot be considered because it was only a "general discipline policy," it is a policy which was officially in effect at CIU 20 at the relevant time nonetheless. Relevant portions of this policy, as referenced by the plaintiffs, provide that behaviors that CIU 20 deems "inappropriate" will " . . . not be tolerated."  In fact, many of the behaviors provided for in the discipline policy are the types of behaviors that Brandon exhibits as a result of his disability, (i.e., emotional disturbance).  For example, the discipline policy lists "[a]busive or belligerent verbal assaults of staff" as " . . . not associated with the exceptionality in question . . ." As such, the policy directs that certain behaviors are not to be considered by staff members as a manifestation of the child's disability.  The discipline policy further provides that, in confronting such behaviors which are not a manifestation of disability, staff members are to "[a]dminister corporal punishment immediately according to I.U. Student Disciplinary Policy."  The plaintiff argues that these are the provisions which led defendant Karpen to take the actions against Brandon which violated the Pennsylvania regulations and, as a result, the

IDEA.   The provisions of the Student Discipline Policy coupled with the actions of defendant Karpen are enough to create a question of fact as to whether there was an affirmative link between the CIU 20's disciplinary policy and the violations to which the plaintiffs allege Brandon was subjected. Therefore, there is a material question of fact as to the CIU 20's liability on the §1983 claim, and the plaintiff's motion for summary judgment should be denied in this respect.

For the reasons set forth above with respect to the IDEA and §1983 claims, the plaintiffs also argue that they are entitled to summary judgment on their §504 and ADA claims.  (Doc. No. 102, pp. 18-19).

The Third Circuit has noted that the requirements imposed by §504 of the Rehabilitation Act substantially duplicate those provided under the IDEA. W.B. v. Matula, 67 F.3d 484, 492-493 (3d Cir.1995) (noting that "[t]here appear to be few differences, if any, between IDEA's affirmative duty and §504's negative prohibition"). Section 504 of the Rehabilitation Act prohibits any federally funded program from discriminating against persons with disabilities.   To this extent, §504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).  To establish a violation of §504, the plaintiffs must establish that: (1) Brandon has a disability; (2) Brandon is

26

"otherwise qualified" to participate in school activities; (3) CIU 20 receives federal financial assistance; and (4) Brandon was excluded from participation in, denied the benefits of, or subject to discrimination at school.  W.B. v. Matula, 67 F.3d at 492 (citations omitted).  The plaintiffs need not establish that CIU 20 intended to discriminate in order to prevail.  Id.

Furthermore, the ADA prohibits discrimination against a person with a disability by reason of such disability.  42 U.S.C. § 12132.  Generally, the same analysis under §504 applies in determining whether a defendant's actions violate the ADA.  Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 279 (3d Cir.1996).

In this case, the court has already found that material issues of fact exist with respect to the plaintiffs' IDEA claim thereby precluding summary judgment.  Because the requirements of §504 and, in turn, the ADA duplicate those of the IDEA, the court recommends that the plaintiffs' motion for summary judgment be denied with respect to these claims as well.

In opposing the plaintiffs' §504 and ADA claims, defendant CIU 20 simply relies on the argument provided in support of its own motion for summary judgment, (i.e., that these claims are subsumed into the IDEA claims).  In denying CIU 20's motion for summary judgment, the court has already found that this is not the case.

Defendant CIU 20 further argues that the plaintiffs' motion for summary judgment should be denied, generally, for several reasons.  (Doc. No. 105).

27

Initially, defendant CIU 20 argues that the plaintiffs' motion should be denied because the plaintiffs failed to support their statement of material facts with references to the parts of the record which support the statements in violation of L.R. 56.1.   The defendant argues, therefore, that the court should disregard the plaintiffs' statement of material facts and summarily deny the motion for summary judgment.  (Doc. No. 105, pp. 3-4).

With respect to this argument, L.R. 56.1 requires that a party filing a motion for summary judgment also file a separate statement of material facts containing numbered paragraphs and citations to the record.  This rule was drafted to create a simple means through which the parties could identify for the court the relevant factual disputes in connection with a summary judgment motion.  Here, while the plaintiffs have failed to reference the record in their statement of facts, they have referenced the record, at least to a certain extent, in their supporting brief.  Moreover, at this juncture of the proceedings, the court declines to grant the drastic remedy suggested by the defendant and completely disregard the plaintiffs' materials and summarily dismiss their motion for summary judgment.  However, the court does note that the plaintiffs' failure to comply with the Local Rules has made it more difficult for the court in reviewing the plaintiffs' motion.

The defendant CIU 20 also argues that res judicata, or claim preclusion, applies to administrative proceedings barring this court from determining whether the defendants denied Brandon a FAPE for the period

28

in question.  (Doc. No. 105, pp. 5-6).

To the extent that the defendant questions this court's ability to make a substantive determination with respect to a claim that had already been addressed by an administrative agency, Supreme Court authority provides that judicially unreviewed state administrative determinations are not entitled to preclusive effect on IDEA claims later filed in federal court.  See Patricia P. V. Board of Educ. of Oak Park, 8 F.Supp.2d 801 (N.D.Ill. 1998)(citing Kremer v. Chemical Constr. Corp., 456 U.S. 461 (1982); University of Tenn. v. Elliott, 478 U.S. 788 (1986)(confirming nonpreclusive effect of unreviewed administrative proceedings in Title VII claims); Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991)(holding that unreviewed state administrative proceedings have no preclusive effect on claims brought under the Age Discrimination in Employment Act)) .  See also JSK v. Hendry County School Board, 941 F.2d 1563 (11th Cir. 1991)(holding that unreviewed state administrative IDEA hearings have no preclusive effect on the federal court system); I.D. v. Westmoreland School District, 788 F.Supp. 634 (D.N.H. 1992)(same).

Defendant CIU 20 further argues in response to the plaintiffs' motion for summary judgment that, while the Third Circuit has indicated that damages are an available remedy under §1983 for violations of the IDEA and directly under the Rehabilitation Act in Matula, it also expressed a preference for compensatory education over compensatory damages.  W.B. v. Matula,

676 F.3d 484, 495 (3d Cir. 1995).  Despite the defendant's argument, the Third Circuit has nonetheless provided that compensatory damages are available and the plaintiffs should be permitted to seek those damages pursuant to §1983 and the Rehabilitation Act.

### 2. Plaintiffs' Request for Summary Judgment with Respect to Defendant Karpen

The plaintiffs also argue that they are entitled to summary judgment on the §1983 and IDEA claims brought against defendant Karpen.  (Doc. No. 102, pp. 6-18).

As set forth above, there are genuine issues of material fact with respect to the §1983 and IDEA claims set forth against defendant Karpen. On this basis, the plaintiff's motion for summary judgment should be denied as well[15].

On the basis of the foregoing,

**IT IS RECOMMENDED THAT:**

**(1)** the motion for summary judgment filed on behalf of defendants CIU 20 and Mickley, **(Doc. No. 91)**, be **GRANTED IN PART AND DENIED IN PART** as discussed above;

---

[15]The court notes that the plaintiff also seeks summary judgment against defendant Karpen on the ADA and §504 claims.  As discussed previously, these claims have been dismissed with respect to defendant Karpen.  Therefore, the plaintiff's motion for summary judgment should be denied in this respect.

**(2)** the motion for summary judgment filed on behalf of defendant

Karpen, **(Doc. No. 93)**, be **DENIED** in its entirety as discussed

above;

**(3)** the cross-motion for summary judgment filed on behalf of the

plaintiffs, **(Doc. No. 96)**, be **DENIED** in its entirety as discussed

above; and

**(4)** the instant action be set down for trial.


S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**


**Dated: March 10, 2006**

O:\shared\REPORTS\2002 Reports\02-2123.01.wpd